# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA DAVIS,<br><br>        Plaintiff,<br><br>    v.<br><br>MUTUAL OF OMAHA INSURANCE COMPANY,<br><br>        Defendant. | Case No. 1:22-cv-00685-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS TO DENY MOTION TO AMEND<br><br>(ECF Nos. 21, 24, 27)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

**I.**

**INTRODUCTION**

Plaintiff Martha Davis ("Plaintiff") initiated this civil action against Defendant Mutual of Omaha Insurance Company ("Mutual of Omaha" or "Defendant") on June 7, 2022. (ECF No. 1.) Presently before the Court is Plaintiff's "Motion for Leave to (1) Modify the Scheduling Order; (2) File a First Amended/Supplemental Complaint; and (3) Concerning Service and Defendant's Response to Said First Amended/Supplemental Complaint." (ECF No. 21 (all caps removed).)

A hearing on the motion was held on July 27, 2023. Counsel Robert Rosati appeared in person for Plaintiff. Counsel Robert Hess appeared by videoconference for Defendant. (See ECF

No. 29.) Having considered the moving and opposition papers, the declarations and exhibits attached thereto, the arguments presented at the July 26, 2023 hearing, as well as the Court's file, the Court issues the following findings and recommendations recommending the motion to amend be denied.

## II.

## BACKGROUND

Plaintiff alleges she has a policy with Defendant that covers "total disability" and "totally disabled," effective since October 1, 2014 (the "Policy"). (Compl. ¶¶ 5, 6, ECF No. 1; Ex. 1, ECF No. 1-1 (the Policy).) On July 16, 2020, Plaintiff went to the emergency department of Sutter Health due to cardiac arrest. (Id. at ¶ 9.) As a result of her heart attack, Plaintiff alleges she suffers from Post-Traumatic Stress Disorder ("PTSD"), ischemic etiology, anxiety, depression, and her brain "does not work very well" and she does not remember things. (Id. at ¶¶ 10–11.) Plaintiff claims she has attempted to return to work after her heart attack, but has been unable to successfully do so. (Id. at ¶ 12.) Plaintiff applied and was approved for Social Security Disability benefits in September 2021. (Id. at ¶ 24.)

Plaintiff alleges she timely applied for disability benefits under the Policy. (Id. at ¶ 13.) However, after providing additional information and documents, Plaintiff received a letter from Defendant dated September 29, 2021 which stated, "no benefits are payable under your claim." (Id. at ¶¶ 14, 15, 25.) Plaintiff continued to call and submit further information to Defendant for review. (Id. at ¶¶ 26–30.) However, by letter dated December 1, 2021, Defendant again denied Plaintiff's claim for disability benefits. (Id. at ¶ 31.)

Plaintiff initiated this action on June 7, 2022. (ECF No. 1.) The complaint asserts two causes of action: (1) breach of contract, and (2) insurance bad faith. (Id. at 1, 12–20.) Plaintiff seeks compensatory damages, damages on the contract, interest, punitive damages, declaratory and injunctive relief, and attorneys' fees and costs. (Id. at 20–22.)

Defendant answered the complaint on July 28, 2022. (ECF No. 7.) On September 16, 2022, a scheduling order issued. (ECF No. 12.) As relevant here, the scheduling order set the

deadline to stipulate to or request leave to amend the pleadings for September 30, 2022.[1] (Id. at 2.) The pretrial conference is currently set for August 5, 2024; trial is set to commence on October 1, 2024. (ECF No. 23 at 2.) A settlement conference is currently set for August 28, 2023. (ECF Nos. 25, 26.)

On June 21, 2023, Plaintiff filed the instant motion to amend. (ECF No. 21.) Defendant opposed the motion on July 5, 2023. (ECF No. 24.) A reply brief was filed on July 14, 2023. (ECF No. 27.) On July 27, 2023, the parties appeared before the Court for a hearing on the motion. (See ECF No. 29.) The matter is now deemed submitted.

### III.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 16, once a scheduling order has been filed, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). A court may modify the schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Zivkovic v. S. California Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (citing Johnson, 975 F.2d at 609). However, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Johnson, 975 F.2d at 609 (compiling cases). Thus, if the party seeking the modification "was not diligent, the inquiry should end." Id.

When the motion to modify the schedule to continue a deadline is made after the deadline has expired, the Court must also consider excusable neglect. See Fed. R. Civ. P. 6(b)(1)(B). Courts look at four factors to determine if a party has established excusable neglect: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable

---

[1] The parties filed a stipulated motion to modify the scheduling order on June 26, 2023, which the Court granted. (ECF Nos. 22, 23.) The schedule was modified to extend the discovery and dispositive motion deadlines, as well as the pretrial conference and trial dates; however, the motion to amend deadline was not extended. (See ECF No. 23 at 2.)

3

control of the movant, and (4) whether the moving party's conduct was in good faith." Pincay v. Andrews, 389 F.3d 853, 855 (9th Cir. 2004) (citing Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 395 (1993)).

Even if the good cause standard is met under Rule 16(b), the Court has the discretion to refuse amendment if it finds reasons to deny leave to amend under Rule 15(a). Johnson, 975 F.2d at 610. Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Nevertheless, "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.' " AmerisourceBergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). "This policy is to be applied with extreme liberality." C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist., 654 F.3d 975, 985 (9th Cir. 2011). "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987).

The Ninth Circuit has considered five factors in determining whether leave to amend should be granted: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether [the] plaintiff has previously amended his complaint." In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013) (citing Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990)). "[T]he consideration of prejudice to the opposing party carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

"Bad faith means acting with intent to deceive, harass, mislead or disrupt." Leines v. Homeland Vinyl Products, Inc., No. 2:18-cv-00969-KJM-DB, 2020 WL 6044037, at *4 (E.D. Cal. Oct. 13, 2020) (citing Leon v. IDX Sys. Corp., 464 F.3d 951, 961 (9th Cir. 2006)).

In evaluating undue delay, the Court inquires "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." AmerisourceBergen Corp., 465 F.3d at 953 (quoting Jackson v. Bank of Haw., 902 F.2d 1385, 1388 (9th Cir. 1990)). However, "undue delay by itself … is insufficient to justify denying a motion to amend." Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999).

Prejudice is the factor that weighs most heavily in the Court's analysis of whether to grant leave to amend. Eminence Capital, 316 F.3d at 1052. "Prejudice results when an amendment would unnecessarily increase costs or would diminish the opposing party's ability to respond to the amended pleading." BNSF Ry. Co. v. San Joaquin Valley R.R. Co., No. 1:08-cv-01086-AWI, 2011 WL 3328398, at *2 (E.D. Cal. Aug. 2, 2011) (citation omitted). Courts have found proposed amendments to be prejudicial when leave to amend is requested as a relevant discovery deadline nears or has already passed. See, e.g., Zivkovic, 302 F.3d at 1087; Lockheed Martin Corp. v. Network Sols., Inc., 194 F.3d 980, 986 (9th Cir. 1999).

Finally, the Ninth Circuit has held that when an amendment is futile, "there is no need to prolong litigation by permitting further amendment." Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002). A proposed amendment is futile where "the pleading could not possibly be cured by the allegation of other facts." Watison v. Carter, 668 F.3d 1108, 1117 (9th Cir. 2012) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).

## IV.

## DISCUSSION

### A. Federal Rule of Civil Procedure 16

Plaintiff seeks to allege additional facts to her breach of contract and insurance bad faith claims related to her discovery that Defendant's employees engaged in "secret, undocumented 'triage meetings' " to evaluate and ultimately reject Plaintiff's disability insurance claim; in addition, she seeks to assert a new cause of action for declaratory relief, based on allegations that Defendant "fraudulently" created a new "Transition Table" attachment to the policy during the course of this litigation, which has the practical effect of reducing Plaintiff's benefit period from ten to seven years. (ECF No. 21-1 at 4–5.)

Here, the deadline for any motions or stipulations requesting leave to amend the pleadings expired on September 30, 2022.[2] (ECF No. 12 at 2.) Accordingly, under Rule 16, the Court must consider Plaintiff's diligence and excusable neglect in bringing this motion. The Court addresses each category of proposed amendments, in turn.

---

[2] Incidentally, September 30 was also the deadline to exchange initial disclosures. (Id.)

1.  Amendments to First and Second Causes of Action

As noted, the complaint asserts causes of action for breach of contract and insurance bad faith. (ECF No. 1 at 1, 12–20.) As to these causes of action, Plaintiff seeks to add allegations about the "secret triage meetings" between Colin Abbatessa, Kurt Steube, and Holly Crawford that were held to confirm the decision to deny Plaintiff's policy claims. Plaintiff asserts these new facts show Defendant's failure to maintain records, failure to document the secret triage meetings, provision of false information to Plaintiff, and misinterpretation/misapplication of the policy. (ECF No. 21-1 at 8.) Relatedly, the complaint asserts Defendant's decisions to deny benefits were based, in part, on reports created by Dr. Phillip Podrid; Plaintiff also seeks to allege new facts regarding the content of Dr. Podrid's reports. (Id. at 7.)

**a.  Diligence**

Plaintiff asserts the "secret triage meeting" evaluation process was not previously disclosed or indicated from either the prelitigation file or initial disclosures Defendant provided in this matter. (Id. at 4, 7.) Rather, Plaintiff proffers she only learned of these "secret meetings" during her deposition of Abbatessa on February 11, 2023, and secondarily through certain discovery responses, and the May 9, 2023 Crawford deposition. (Id. at 4, 7–9, 11–13; Rosati Decl. ¶¶ 32, 34, 50, 58, ECF No. 21-2; Ex. 149, ECF No. 31-4 at 52–158 (Abbatessa dep.); Ex. 150–151, ECF No. 21-4 at 159–83 (Def.'s Resp. to SIs and RPDs, Set One); Ex. 155, ECF No. 21-4 at 224–72 (Crawford dep.).) Similarly, Plaintiff contends she only learned of the specific findings contained in Dr. Podrid's reports during Abbatessa's deposition. (ECF No. 21-1 at 7.)

Defendant acknowledges the proffered factual allegations are derived from subsequent discovery, and appears to only argue the excusable neglect factors are not satisfied, as further discussed herein. (See ECF No. 24 at 17–21.) Accordingly, the Court finds Plaintiff has established the diligence factor as to these proposed amendments.

**b.  Excusable Neglect**

As noted, determining whether Plaintiff has established excusable neglect for seeking to amend the pleadings after expiration of the deadline to amend requires consideration of the following factors: (1) danger of prejudice to the non-moving party, (2) length of delay and its

1 potential impact on judicial proceedings, (3) reason for the delay, and (4) whether the moving party's conduct was in good faith. Pincay, 389 F.3d at 855.

As to the first two elements, Plaintiff argues Defendant will not be prejudiced because, even with the proposed amendments and additional cause of action, discovery will still be completed in time without the need to further extend the deadlines. (ECF No. 21-1 at 15–16.) The proffered reason for the delay is the same as previously identified under diligence: Plaintiff discovered the basis for the additional allegations to the breach of contract and insurance bad faith claims for the first time during recent discovery. Further, Plaintiff argues the amendment is sought, based on the good faith belief that such additional facts must be pled to satisfy the Rule 9 particularity requirements for fraud-based actions, and in order to preserve Plaintiff's ability to raise these contentions at trial. (See ECF No. 27 at 3–7.)

In opposition, Defendant argues any amount of delay in litigation caused by reverting the case back to the pleading stage, or resources Defendant would be required to expend to prepare another answer to the complaint or supplemental discovery arising therefore would be prejudicial, particularly where, as here, the proposed amendments are unnecessarily and futile. (ECF No. 24 at 6, 13–21.) On balance, the Court finds Defendant has the better argument.

As an initial matter, the Court notes it does not find Plaintiff's motion or proposed amendments were made in bad faith. See Leines, 2020 WL 6044037, at *4. Accordingly, the Court has reviewed Plaintiff's proposed amendments to the first two causes of action. The number of proposed additional facts is substantial. (See ECF No. 21 at 5, 7, 11–16, 18–24, 27–32.) However, the Court remains unpersuaded that such amendments are necessary.

Federal Rule of Civil Procedure 8 requires a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Courts have recognized that the main purpose of the complaint is to provide notice to the defendant of what the plaintiff's claim is and the grounds upon which the claim rests. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 679 (9th Cir. 2001) (under "the liberal system of 'notice pleading' set up by the Federal Rules," a claimant need not "set out in detail the facts upon which he bases his claim," but only " 'a short and plain statement of the claim' that will give the defendant fair

notice of what the plaintiff's claim is and the grounds upon which it rests").

Plaintiff argues that the additional facts are necessary because if she does not allege them, they may be deemed waived and she could be precluded from presenting them at the summary judgment and/or trial stage. However, Plaintiff has not identified any particularly on-point legal authority that supports her contention.

To the contrary, the Court finds the Ninth Circuit's reasoning in Self Directed Placement Corp. v. Control Data Corp., 908 F.2d 462 (9th Cir. 1990), to be on-point and particularly instructive here. In Self Directed, the plaintiff listed four claims for relief: (1) copyright infringement of the "Self Directed Placement Corporation Student Handbook"; (2) copyright infringement of the "CDI Training Tape"; (3) violations of trade secret; and (4) fraud. Self Directed, 908 F.2d at 464. As relevant here, the defendant moved for summary judgment, which the district court granted. Id. at 465. On appeal, the plaintiff argued the district court failed to address its unfair competition claim. Id. The defendant countered that no unfair competition claim was properly raised by the plaintiff (as there was no explicit cause of action for "unfair competition" asserted in the complaint). Id. at 466. The Ninth Circuit, however, found the plaintiff sufficiently raised the issue of unfair competition in its pleadings to put the defendant on notice of the claim, and therefore remanded the case to the district court to consider the plaintiff's unfair competition claim. Id. at 467. In holding that the plaintiff sufficiently raised the issue of unfair competition, the Ninth Circuit explained Rule 8 is a "notice pleading" standard. Id. at 466–67 (citations omitted). Thus, even though the complaint did not assert an explicit claim entitled "unfair competition," the defendant was put on notice of the unfair competition claim because the complaint "refer[red] to unfair competition in its jurisdictional statement, in both copyright infringement claims and in its prayer for relief."[3] Id. at 466.

In sum, "in federal court, a plaintiff is not required to allege facts creating a complete

---

[3] More specifically, the jurisdictional statement alleged the action arose "in part under the copyright laws of the United States, … in part under the laws of the State of California, and in part under the common law of trademarks and unfair competition." Id. at 464. In the copyright infringement claims, the complaint alleged the defendant had infringed its work, "thereby … engaging in unfair trade practices and unfair competition against [the plaintiff] to [the plaintiff's] irreparable damage." Id. In the prayer for relief, the complaint requested the defendant pay damages sustained as a consequence of the defendant's copyright infringement and unfair trade practices and unfair competition. Id.

picture of the alleged wrongdoing or even to plead the particular claim as a separate cause of action; all that is needed is enough to put the defendant on notice of the claim asserted." Zappa v. Am. Gen. Life Ins. Cos., No. 08CV0319-LAB (NLS), 2008 WL 11508681 (S.D. Cal. May 8, 2008) (citing Self Directed, 908 F.2d at 466); see also RA Med. Sys., Inc. v. PhotoMedex, Inc., 373 Fed. App'x 784, 787 (9th Cir. 2010) (citing Self Directed with approval; holding "[plaintiff's] satisfaction of notice pleading requirements is highlighted by the fact [defendant's] court filings and appellate brief 'demonstrate that they had fair notice of what [plaintiff's] claims are and the grounds upon which they rest.' "); Newcal Indus., Inc. v. Ikon Office Sol., 513 F.3d 1038, 1053–54 (9th Cir. 2008) (plaintiff sufficiently alleged facts to support its Lanham Act claim when it listed particular statements constituting false or misleading statements of fact); Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 841–42 (9th Cir. 2007) (concluding the allegations made in a "succinct" complaint were adequate because "concerns about specificity in a complaint are normally handled by the array of discovery devices available to the defendant").

Here, Plaintiff's proposed additional factual allegations to the breach of contract and insurance bad faith claims are unnecessary because Plaintiff's allegations already state cognizable causes of action. For example, the elements of a claim for breach of contract are: (1) the existence of a contract; (2) the plaintiff's performance of the contract or excuse for nonperformance; (3) the defendant's breach; and (4) the resulting harm to the plaintiff. See Perez-Encinas v. AmerUs Life Ins. Co., 468 F. Supp. 2d 1127 (N.D. Cal. 2006). The original complaint asserts sufficient factual allegations as to each element of this claim. (See, e.g., Compl. ¶¶ 5, 33–34 (identifying the insurance Policy), 35 (performance), 26–31, 36–37 (breach), 38 (damages).) Likewise, to establish an insurance bad faith claim, the plaintiff must show: (1) the insurer withheld benefits due under the policy; and (2) the reasons for withholding benefits was unreasonable or without proper cause. Fontaine v. Provident Mut. Life Ins. Co. of Philadelphia, 10 Fed. App'x 415 (9th Cir. 2011). These elements are also sufficiently met in the original complaint. (See, e.g., Compl. ¶¶ 21–31, 48–57.)

Plaintiff's argument that the proposed additional allegations are necessary to satisfy Rule 9's heightened pleading standard that applies to fraud-based claims and Plaintiff's prayer seeking

punitive damages (ECF No. 27 at 1–7), is unavailing for the same reasons. Plaintiff's reply relies heavily on cases such as GlenFed, Inc., Securities Litigation, 42 F.3d 1541, 1545 (9th Cir. 1994), Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009), and Cafasso v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1055 (9th Cir. 2011), for the general proposition that she must plead facts with particularity for her fraud-based claims under Rule 9 and prayer for punitive damages. (See ECF No. 27 at 3–4.). However, these cases discuss the pleading standard with respect to pleadings that were challenged on the face of the complaint. Thus, these cases are procedurally distinguishable from the instant matter. Regardless, the original complaint contains allegations expressly supporting fraud claims and punitive damages. (See Compl. ¶¶ 59–69, ECF No. 1 (malice, oppression and fraud allegations); see also Compl. prayer, ECF No. 1 at 21 (alleging punitive damages based on bad faith allegations).)

Notably, Defendant did not challenge the pleadings at that stage, but instead accepted them as sufficiently pled and answered the complaint. (ECF No. 7.) The pleadings, in fact, have not been at issue for several months. After the September 30, 2022 deadline to amend the pleadings expired, the parties engaged in discovery: several sets of written discovery have been exchanged and multiple depositions have been taken. Indeed, this matter is currently set for a settlement conference on August 28, 2023 (see ECF No. 25); and non-expert discovery closes September 29, 2023 (see ECF No. 23 at 2). Given the well-advanced posture of this action and the foregoing legal authorities, Plaintiff's argument that her already-stated claims may yet be waived, or that she would be precluded from presenting evidentiary support for the various theories of recovery under those claims absent further amendment is unavailing. For these same reasons, the Court finds that modifying the schedule to continue the ten-month expired deadline to amend, permitting the identified amendments to these two causes of action, and requiring Defendant to answer another complaint is redundant, constitutes an unnecessary delay of the litigation, and would therefore unduly prejudice Defendant.

On this record, the Court finds Plaintiff has not established excusable neglect for seeking to amend the pleadings after expiration of the deadline. Therefore, Plaintiff has not established good cause exists under Rule 16 to modify the scheduling order to extend the deadline to amend

the pleadings with respect to these causes of action. Having declined to modify the schedule to extend the September 30, 2022 deadline to amend the pleadings, Plaintiff's motion to amend the two causes of action is untimely and must be denied.

### 2. Proposed New Cause of Action: Declaratory Relief

Plaintiff also seeks to add a cause of action for declaratory relief based largely on her discovery that, after initiation of this lawsuit (see ECF No. 21 at 33–53), Defendant added a "Transition Table" to the Policy which has the practical effect of reducing Plaintiff's benefit period from ten to seven years.[4] (ECF No. 21-1 at 4–5, 9–11.) Defendant opposes the amendment.

Plaintiff proffers the Transition Table was neither attached to the original policy in Plaintiff's possession, nor produced in the prelitigation file from Defendant or Defendant's September 30, 2022 initial disclosures. Instead, Plaintiff asserts she first received the Transition Table as part of an updated version of the Policy in discovery in November 2022 and supplemental responses received through May 2023. Plaintiff further maintains she did not learn the specifics of when or how the Transition Table came to become part of her Policy document until her deposition of Joann Ruhr on May 10, 2023. (ECF No. 21-1 at 4, 11–15; Rosati Decl. ¶¶ 12, 28, 45, 51, 57; Exs. 152–153, ECF No. 21-4 at 184–219 (Def. Resp. to SIs, Set Two and RFPs, Set Three); Exs. 158–161, ECF No. 21-4 at 368–420 (Def.'s corrected resp. to SI and RPD, Set One, and RPDs, Set Two); Ex. 156, ECF No. 21-4 at 273–329 (Ruhr Dep.).)

In opposition, Defendant argues Plaintiff knew all of the circumstances regarding the purported "fraudulent" policy at least as early as November 2022, when Defendant served a "corrected duplicate policy" containing the policy schedule and Transition Table in its supplemental disclosures. (ECF No. 24 at 21–22.) While this argument is not without merit, the

---

[4] Meanwhile, Defendant has asserted the absence of a transition table from prior productions of Plaintiff's Policy was a result of a "coding error," in which incomplete duplicate policies that did not include the Transition Table were inadvertently sent to Plaintiff and her attorney. (ECF No. 24 at 8–12.) Thus, the parties appear to dispute whether Plaintiff's original hard copy of the subject Policy included any transition table and whether the omission of a transition table on some policies was intentional on the part of Defendant. (See ECF No. 27 at 2.) As Defendant correctly notes, however, the issue of whether inclusion/omission of the Transition Table was done fraudulently or otherwise is not pertinent to the instant motion to amend but rather, is a question of fact that may be raised by the parties, with supporting evidence, on summary judgment or at trial.

1    Court cannot conclude that Plaintiff's actions were entirely without diligence.

2    On the one hand, Plaintiff acknowledges she received the allegedly "fraudulent" copy of her Policy with the Transition Table from Defendant in November 2022. (ECF No. 21-1 at 13.) Her knowledge regarding the potential claim for declaratory relief arises, at least in part, from comparison of the Policy documents provided in November with her personal knowledge of her original copy of the Policy (which does not contain the Transition Table). (See id. at 13–14.) Thus, it is possible Plaintiff could have sought to amend the complaint to add this claim as early as November 2022. On the other hand, Plaintiff appears to assert that it was the additional information she obtained during the May 10, 2023 deposition of Ms. Ruhr, as well as Defendant's supplemental and corrected written discovery responses that conclusively alerted her to the alleged fraudulent cover-up.[5] (Id. at 9–10, 16; Rosati Decl. ¶ 51, ECF No. 21-2.) In addition, Plaintiff notes she received nearly 1,000 pages of documents in Defendant's production responses (ECF No. 21-1 at 12); the Court acknowledges that Plaintiff may have reasonably required some additional time to complete review of such a substantial production. Thus, the Court declines to conclude that Plaintiff did not demonstrate sufficient diligence under Rule 16's requirements. Accordingly, the Court next turns to the excusable neglect analysis.

The Court finds Plaintiff has sufficiently established the excusable neglect factors (danger of prejudice to the non-moving party; length of delay and its potential impact on judicial proceedings; reason for the delay; and good faith, Pincay, 389 F.3d at 855) weigh in favor of permitting modification of the scheduling order. Unlike the proposed amendments to the two existing causes of action, the Court finds the proposed third cause of action and related prayer for relief contains substantially different allegations not previously addressed in the original

---

[5] It appears that some of the delay in Plaintiff's discovery of certain information was due, in part, to the delay in scheduling depositions due to the availability of the witnesses. (See ECF No. 21-1 at 12.) The Court notes that diligence in litigation requires the parties to seek discovery at the outset of the litigation, rather than near the closing deadline of discovery. Plaintiff indicates, for example, that while she first sought to schedule Mr. Abbatessa's deposition in June 2022, Mr. Abbatessa was not made available for his deposition until February 2023. (Id.) Where delays result from opposing parties not scheduling depositions or making witnesses available for extended periods of time, the parties are reminded that the Court offers an informal discovery process wherein such matters may be informally brought before the Court and resolved more expediently. Utilizing this informal process presents a valuable opportunity to avoid the aforementioned issues and delays, as well as unnecessarily burdening the Court—which is already impacted due to the judicial emergency in the Eastern District of California—with additional motions.

1 complaint. Consequently, any prejudice to Defendant in being required to answer an amended
2 complaint addressing this new claim is outweighed by the interests of proceeding on the merits of
3 this litigation and Plaintiff being permitted to assert a claim based on newly-discovered evidence.
4 Accordingly, Plaintiff's motion to modify the schedule to continue the deadline to amend the
5 pleadings should be granted, to the extent Plaintiff seeks leave to amend the complaint to add a
6 third cause of action for declaratory relief.

### B. Federal Rule of Civil Procedure 15

Having determined the Rule 16 requirements are not met as to Plaintiff's proposed amendments to the first and second causes of action, the inquiry ends there, Johnson, 975 F.2d at 609, and the Court does not reach the Rule 15 analysis to determine whether Plaintiff should be granted leave to amend those claims. Accordingly, Plaintiff's motion to amend is untimely and must be denied as to those claims.

With respect to Plaintiff's proposed third cause of action for declaratory relief, however, having found the Rule 16 requirements sufficiently met, the Court next considers the Rule 15 factors of bad faith, undue delay, prejudice, futility, and previous amendments. W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d at 738. On balance, the Court finds these factors weigh in favor of permitting amendment. For the reasons previously discussed, the Court does not find Plaintiff's amendments are sought in bad faith. Nor does the proposed amendment for declaratory relief appear futile. For the same reasons the Court determined Plaintiff acted diligently and raised the instant motion after obtaining evidence in discovery to support the proposed cause of action, it concludes no undue delay. AmerisourceBergen Corp., 465 F.3d at 953. Nor does the Court find permitting amendment would be unduly prejudicial. While Defendant will need to respond to a new complaint, it does not appear that Defendant will be burdened with substantial additional discovery; to the contrary, it appears from the moving papers and exhibits that Plaintiff has already conducted the necessary discovery relating to her proposed claim. Further, Plaintiff proffered that she expected discovery to be completed by the currently scheduled discovery deadline.[6] (ECF No. 21-1 at 17); Zivkovic, 302 F.3d at 1087. Finally, the

---

[6] Plaintiff is cautioned, however, that the foregoing findings are premised on the Court's understanding that very

instant motion constitutes Plaintiff's first attempt to amend the complaint, which also weighs in her favor. Accordingly, the Court finds Plaintiff should be permitted leave to amend the complaint to add the proposed third cause of action for declaratory relief (ECF No. 21 at 33–53 (specifically, proposed ¶¶ 68–121)) and its related prayer for relief (ECF No. 21 at 54–55, ¶ 12), and that all other proposed amendments be denied.

## V.

## CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion to modify the schedule to extend the deadline to amend the pleadings (ECF No. 21) be GRANTED, to the extent that the deadline to amend the pleadings is extended only with respect to Plaintiff's motion to amend the complaint to add a cause of action for declaratory relief; and

2. Plaintiff's motion to amend (ECF No. 21) be GRANTED in part and DENIED in part, as follows:

    a. DENIED as untimely as to Plaintiff's proposed amendments to the first and second causes of action; and

    b. GRANTED as to Plaintiff's proposed cause of action for declaratory relief and related prayer for relief.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within

---

little, if any, further discovery will be required with respect to the new cause of action, as it is related in many ways to the other claims, for which significant discovery has already been completed, and based on the averment of counsel that discovery will be timely completed in accordance with the current deadlines. Accordingly, the parties are advised that the Court will not be inclined to further modify the schedule to extend the discovery or other pretrial deadlines, or trial dates.

the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **August 8, 2023**

UNITED STATES MAGISTRATE JUDGE